PEOPLE v FORTSON

Docket No. 134589. Submitted August 11, 1993, at Lansing. Decided
    October 5, 1993, at 9:10 A.M. Leave to appeal sought.

    John D. Fortson, Jr., was convicted by a jury in the Tuscola
    Circuit Court, Patrick R. Joslyn, J. of voluntary manslaughter
    and possession of a firearm during the commission of a felony.
    The defendant had been bound over to the circuit court on a
    charge of open murder, and the prosecution was allowed to
    amend the information to add the felony-firearm count, even
    though the defendant had not been bound over on that charge.
    The defendant was sentenced to a prison term of from ten to
    fifteen years for the manslaughter conviction and a consecutive
    term of two years for the felony-firearm conviction. The defen-
    dant appealed.

    The Court of Appeals held:

    1. A circuit court may allow amendment of an information
by the addition of a felony-firearm charge even though the
defendant was not bound over on that charge where the
amendment will not result in the defendant being subjected to
unfair surprise, inadequate notice, or insufficient opportunity to
defend the new charge. Because the defendant claimed self-
defense and did not contest the use of a firearm and the
defense was afforded ample opportunity to prepare for the new
charge, the defendant did not suffer unfair surprise and was
not denied adequate notice or sufficient opportunity to defend
against the new charge.

    2. The trial court properly admitted into evidence a handgun
owned by the defendant's wife when that evidence became
relevant to whether the defendant had engaged in an attempt
to fabricate evidence concerning his defense of self-defense.

    3. It was harmless error for the trial court to refuse to allow
the defense to play a tape of a police emergency call made
shortly before the fatal shooting in view of the fact that the
person who had made the call to the police testified in full

REFERENCES

Am Jur 2d, Indictments and Informations §§ 174, 183.

Comment Note.—Power of court to make or permit amendment of
    indictment. 17 ALR3d 1181.

concerning the nature of the call and parts of the recorded conversation were read into the record by defense counsel.

4. The court's refusal to allow testimony concerning the victim's general reputation for violence was harmless error in the face of testimony concerning the victim's actual aggressive behavior and threats directed toward the defendant on the day of the shooting.

5. There was sufficient evidence, if believed by the jury, to support the manslaughter conviction and to support the rejection of the defendant's claim of self-defense.

6. The court's instructions to the jury fully and fairly presented the issue of self-defense.

7. The trial court erred in ordering that the sentence for the felony-firearm conviction be served after the sentence for manslaughter, rather than in the opposite order as required by statute.

8. The trial court erred in making an independent finding that the defendant was guilty of first-degree murder rather than manslaughter and to use that finding as a basis to justify the sentence imposed.

Affirmed, but remanded for resentencing before a different judge.

CRIMINAL LAW — PRELIMINARY EXAMINATION — AMENDMENTS OF INFORMATIONS.

A circuit court may allow amendment of an information by the addition of a charge of possession of a firearm during the commission of a felony even though the defendant was not bound over on that charge where the amendment will not result in the defendant being subjected to unfair surprise, inadequate notice, or insufficient opportunity to defend the new charge.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *James R. Reed,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

*Martin J. Beres,* for the defendant on appeal.

Before: HOOD, P.J., and CAVANAGH and R. J. TAYLOR,* JJ.

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Defendant, who had originally been charged with open murder, MCL 750.316; MSA 28.548, was convicted by a jury of voluntary manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He was sentenced to consecutive prison terms of ten to fifteen years and two years, respectively, and appeals as of right. We affirm in part, vacate in part, and remand for resentencing before a different judge.

Defendant first argues that the trial court erred in allowing the prosecutor to amend the information to add the felony-firearm count even though defendant was never bound over on such a charge. We disagree.

A trial "court may at any time before, during or after the trial amend the indictment in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence." MCL 767.76; MSA 28.1016. Until recently, this section had been construed to allow amendments to cure errors in the indictment, but not to allow an amendment that would add a new charge. See *People v Price,* 126 Mich App 647, 651-655; 337 NW2d 614 (1983); see also *People v Erskin,* 92 Mich App 630, 637-641; 285 NW2d 396 (1979). Recently, however, our Supreme Court peremptorily reversed a refusal to allow an amendment proposed at the end of the preliminary examination that would have added a new charge. *People v Hunt,* 442 Mich 359; 501 NW2d 151 (1993).

In *Hunt,* the Supreme Court noted that the right to a preliminary examination is statutory, not constitutional. *Id.* at 362. The function of a preliminary examination is to determine whether there is probable cause. *Id.* A preliminary examination also "helps to satisfy the constitutional

requirement that the defendant 'be informed of the nature of the accusation' against him." *Id.*

The Court pointed out that probable cause is required for a proper bindover and that "[i]t is the bindover, or waiver, that authorizes the prosecution to file an information." *Id.* "However, the information 'is not predicated upon the complaint or the examination upon which a warrant issues' . . . [but r]ather the information is 'presumed to have been framed with reference to the facts disclosed at the examination.'" *Id.* at 363. Thus, the examining "magistrate is not bound by the limitation of the written complaint." *Id.*

The *Hunt* Court determined that the proofs presented at the preliminary examination would have supported a bindover on the charge sought to be added. *Id.* at 363-364. "[T]he question then bec[ame] whether the amendment requested by the prosecution would have caused unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend," in other words, whether defendant had "a fair opportunity to meet the charges against him." *Id.* at 364. The Court found that, where the testimony supported the new charge, where there was no indication that defense counsel's actions at the preliminary examination would have been any different had he known of the new charge, and where the prosecutor offered to allow additional questioning of witnesses, there was no "*unfair* surprise, *inadequate* notice, or an *insufficient* opportunity to defend." *Id.* at 364-365 (emphasis original). We believe that the same holds true in this case.

Here, defendant's mother-in-law testified at the preliminary examination that defendant had a shotgun and that he loaded it before the shooting. The testimony was undisputed that the victim died

of a gunshot wound to the head. Further, defendant has never contested that he had a shotgun and used it. His only claim was that he acted in self-defense under the reasonable belief that the victim was armed and was about to attack defendant's home, family, and guests.

It is true that in this case, unlike in *Hunt,* the prosecutor did not move to amend the information until four months after the preliminary examination and that he refused to consent to a new preliminary examination. However, defendant had ample time to prepare to meet the new charge, because it took a month before the motion was heard and an additional four months before defendant was brought to trial. Additionally, there is no claim that counsel's questioning or strategy at the preliminary examination would have been any different had he known of the felony-firearm charge. Under these circumstances, we find that the trial court's refusal to remand the case for a preliminary examination regarding the felony-firearm charge did not result in "*unfair* surprise, *inadequate* notice, or an *insufficient* opportunity to defend."

Next, defendant argues that the trial court erred in admitting into evidence a gun belonging to defendant's wife. We disagree.

It is undisputed that about a month after defendant's arrest his wife had defendant's brother and a friend plant the wife's gun near the scene. This was done in an effort to substantiate defendant's claim that the victim had a gun. However, defendant argues that this gun was irrelevant to his guilt or innocence and was also highly prejudicial. We disagree.

There was some testimony tending to link defendant with the conspiracy to plant the gun. Specifically, defendant apparently told a jail guard sev-

eral hours before the gun was actually found that a gun was going to be found. In light of this testimony, the gun was relevant to the credibility of defendant's allegation that the victim was armed and that defendant acted in self-defense. Further, the probative value of the evidence of the gun was not substantially outweighed by the danger of unfair prejudice.

Defendant next complains that the trial court deprived him of a fair trial by refusing to allow him to play back to the jury a taped emergency call placed to the police by one of defendant's guests just before the shooting. We disagree.

Defendant's guest called the police at defendant's request and told the authorities that he thought that the victim was armed. However, he testified that he did not see any guns and that he was just relaying information given to him by defendant. The witness, defendant's mother-in-law, and the other three guests all saw the victim put his hand inside his coat and assumed that he was armed. However, no one except defendant testified to seeing a gun. No gun other than that owned by defendant's wife was ever recovered.

We do not decide whether the guest's taped call to the police was admissible as an excited utterance under MRE 803(2) or as a present sense impression under MRE 803(1). Instead, we find that any error in refusing to permit the playing of the tape was harmless beyond a reasonable doubt because the witness testified concerning the conversation and because portions of the recorded conversations were read into the record by defense counsel. Playing the tape to the jury would have therefore been cumulative, and there is no indication that failing to do so prejudiced defendant.

Defendant's next argument is that the trial court abused its discretion in refusing to allow

testimony regarding the victim's reputation for violence in the community. We do not find error requiring reversal.

As argued by defendant, evidence of a victim's character for violence is admissible where the defendant claims that he acted in self-defense. See MRE 404(a)(2); MRE 405. However, in this case, the trial court's refusal to admit this evidence was harmless because there was other testimony from which the jury could have found that defendant's fear of the victim was reasonable. For example, the victim had threatened defendant about four days earlier and, on the day he was killed, had argued with defendant on the phone many times, had come to the house twice, and was loud, belligerent, very drunk, and under the influence of cocaine. There was also expert testimony that a person with the victim's high blood alcohol level (0.32 percent) and high blood-cocaine level (225 nanograms) might have schizophrenic symptoms, would be hostile, hyperactive, and delusional and would have impaired judgment. Given the overwhelming evidence of the victim's aggressive behavior on the day of the shooting, we find that the failure to admit character evidence was harmless beyond a reasonable doubt.

Next, defendant argues that there was insufficient evidence to sustain the jury's verdict of voluntary manslaughter, because the prosecutor failed to disprove defendant's theory of self-defense beyond a reasonable doubt. We disagree.

Voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool and reason to resume its habitual control. *People v Pouncey,* 437 Mich 382, 388; 471 NW2d 346 (1991). "[T]he killing of another in self-defense

is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin,* 434 Mich 482, 502; 456 NW2d 10 (1990). Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt. *People v Bell,* 155 Mich App 408, 414; 399 NW2d 542 (1986).

Here, viewing the evidence in the light most favorable to the prosecution, the evidence introduced below—particularly the fact that no one but defendant saw the victim with a gun and also the fact that the victim had not attempted to enter defendant's home—was sufficient for the jury to find that defendant's belief of imminent danger either was not honest or was unreasonable.[1] Reversal, therefore, is unwarranted on this ground.

Next, defendant argues that the trial court erred in refusing to instruct the jury that defendant had no duty to retreat from his own home. We again disagree. Viewing the instructions given as whole, we find that they fully and fairly presented the issue of self-defense to the jury. *People v Caulley,* 197 Mich App 177, 184; 494 NW2d 853 (1992). Whether defendant had a duty to retreat was never an issue in this case.

Lastly, defendant argues that the sentencing court committed several errors that entitle him to resentencing. We agree.

We note first that, although not raised by defendant, the trial court erred in ordering him to serve the two-year mandatory consecutive sentence for felony-firearm *after* the sentence for voluntary

---

[1] We disagree with the prosecution's assertion that the evidence showed that defendant intentionally lured the victim to his house and engineered the shooting to make it look like self-defense. If the jury had found this, it would have convicted defendant of first-degree premeditated murder and not voluntary manslaughter.

manslaughter instead of before as required by the statute. MCL 750.227b(2); MSA 28.424(2)(2). On remand, that error should be corrected.

Second, defendant correctly argues that the trial court erred in making an independent finding that defendant was guilty of first-degree premeditated murder[2] as a reason for justifying the sentence imposed, in direct contravention of the jury's verdict of voluntary manslaughter. *People v Glover,* 154 Mich App 22, 45; 397 NW2d 199 (1986).

Because these errors require that defendant be resentenced, we do not address his argument that the ten- to fifteen-year sentence imposed violates the principle of proportionality. See *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). We note, however, that a departure from the minimum sentence range recommended by the guidelines must be explained on the record. See *People v Harris,* 190 Mich App 652, 668-669; 476 NW2d 767 (1991). We also decline to address as moot defendant's claim that he received ineffective assistance of counsel at the sentencing hearing.

We note that defendant also argues that the sentencing court in calculating the recommended minimum range under the sentencing guidelines impermissibly relied upon five misdemeanor convictions obtained while defendant was without counsel. *People v Olah,* 409 Mich 948 (1980). Defendant did not object below to this alleged miscalculation. Further, the presentence investigation report belatedly submitted to this Court neither supports this contention nor has appended to it the Genesee County report that according to defendant, discloses the lack of counsel. We therefore cannot review this argument. However, defendant may raise this issue upon resentencing as provided

---

[2] See n 1, *supra.*

in *People v Moore,* 391 Mich 426, 440-441; 216 NW2d 770 (1974).

Defendant's convictions are affirmed. His sentence is vacated, and the case is remanded for resentencing before a different judge.[3]

---

[3] Given the judge's reliance on defendant's unrelated drug conviction, we cannot reasonably expect that he will set aside his views upon resentencing. *People v Hughes,* 165 Mich App 548, 549-550; 418 NW2d 913 (1987).