# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAMONE WOODS,

      Defendant-Appellant.

UNPUBLISHED
March 8, 2016

No. 324538
Wayne Circuit Court
LC No. 14-001800-FH

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant, Damone Woods, appeals by right his jury convictions of felonious assault, MCL 750.82, and aggravated assault, MCL 750.81a(1). The jury acquitted Woods of assault with intent to do great bodily harm less than murder, MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Woods to serve one year on probation for both convictions. On appeal we conclude that there were no errors warranting a new trial. Accordingly, we affirm.

In February 2014, Woods' daughter, Christa Eades, asked him to drive her to her home in order to remove her belongings. Eades had moved out of the home a few days earlier after being subjected to years of physical abuse by her boyfriend, Michael Sparks. Woods agreed to drive her to her home, which was located in the upstairs level of a duplex. On the way, Woods drove by a nearby gas station that Sparks frequented in order to ensure that Sparks was not in the area. When they arrived at the home, they also did not see any cars in the driveway. Woods and Eades were unaware that Sparks was sitting in a car a few houses down.

Eades went inside while Woods waited for her on the landing. Almost immediately, Sparks opened the door to the stairwell. Sparks testified that Woods attacked him. He said Woods hit him in the face, fired his gun, and then dragged him outside and continued to beat him. Woods also pointed and fired his weapon at Sparks in order to scare him. After a neighbor, Herman Johnson, turned on a light, Woods was momentarily distracted and Sparks escaped. Sparks said that, as he was running away, Woods fired another shot at him. Johnson testified that he heard one shot fired the night of the incident.

Woods testified that he was acting in self-defense. He stated that while he was waiting for Eades to remove her things, Sparks kicked in the door and began to run up the stairs. Woods argued with Sparks and Sparks reached for an axe that was on a ledge near the stairwell.

-1-

According to Woods, they struggled over the axe and eventually made their way outside. Woods related that during the fight his gun fell out of his holster and fired as it hit the ground. He denied ever pointing the gun at Sparks or firing it at him. Eades also testified at trial that Woods acted in self-defense.

Woods first argues that there was insufficient evidence to refute beyond a reasonable doubt his claim of self-defense. This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). We review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

Woods has not challenged the sufficiency of the evidence for the elements of felonious assault and aggravated assault. Rather, he argues that the prosecution failed to refute beyond a reasonable doubt that he acted in self-defense. "Once a defendant claims that he or she acted in self-defense, the prosecution bears the burden of disproving the defense beyond a reasonable doubt." *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993).

The Self-Defense Act, MCL 780.971 *et seq.*, "codified the circumstances in which a person may use . . . self-defense . . . ." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013) (citation and quotation marks omitted). MCL 780.972(2) applies to the use of non-deadly force:

> An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

A person who uses excessive force or acts as the initial aggressor does not act in justifiable self-defense. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010).

At trial, Sparks testified that as soon as he entered the home, Woods attacked him. Woods struck him in the face multiple times and fired his gun at him on three occasions in order to frighten him. The prosecution also introduced Johnson's testimony, which established that a gun was fired and that two men were fighting in front of his home. Officer Melvin Williams of the Detroit Police Department further testified that Sparks came into the Detroit Police Department's tenth precinct with gashes on his forehead and nose. In response, Woods testified that Sparks was the aggressor and that he responded only in self-defense. Eades' also testified that Sparks instigated the fight.

Although there was conflicting testimony about who started the fight, this Court must view the evidence in the light most favorable to the prosecution. In addition, [t]his Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses." *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005). Because the jury was free to believe Sparks' claim that Woods started the fight without

provocation, there was sufficient evidence in the record for a rational trier of fact to find beyond a reasonable doubt that Woods did not act in self-defense.

Woods next argues that he was denied effective assistance of counsel as a result of his trial lawyer's failure to challenge potential jurors who were related to prosecutors or police officers. Woods argues that his lawyer should have challenged the jurors because they must have been biased in favor of the prosecution. The ultimate constitutional issue arising from an ineffective assistance of counsel claim is reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Because there was no evidentiary hearing on this issue, our review is limited to mistakes that are apparent on the record alone. *People v Barclay*, 208 Mich App 670, 672; 528 NW2d 842 (1995).

In order to prevail on an ineffective assistance of counsel claim, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To satisfy the prejudice prong of the analysis, "a court must conclude that there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *Pickens*, 446 Mich at 312, quoting *Strickland v Washington*, 466 US 668, 695; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

In reviewing a claim of ineffective assistance, this Court must affirmatively entertain the range of possible reasons that counsel may have had for acting as he or she did. *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864. If there might have been a legitimate strategic reason for the act or omission, this Court must conclude that counsel's conduct fell within the range of reasonable professional conduct. *Id.* at 22-23.

Woods' trial lawyer may have had a legitimate strategic reason for refusing to challenge the jurors; his lawyer may—by way of example—have felt that the jurors at issue were more likely to be fair and impartial on the basis of how they responded to questioning or from their facial expressions and body language. See *People v Unger*, 278 Mich App 210, 258; 749 NW2d 272 (2008) (stating that "the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions"). Accordingly, Woods has not overcome the presumption that his trial lawyer's decision was within the range of reasonable professional conduct. *Gioglio*, 296 Mich App at 22-23.

Finally, Woods argues that he was prejudiced and denied due process when the trial court allowed Sparks to remain in the courtroom while Eades was testifying. We review for an abuse of discretion the decision of whether to exclude a witness from the courtroom. *People v Jehnsen*, 183 Mich App 305, 309; 454 NW2d 250 (1990). Under MRE 615 a trial court "may order witnesses excluded so that they cannot hear the testimony of other witnesses" except in the case of a person whose presence is shown by a party to be essential to the presentation of his cause. A victim generally has the right to be present throughout the entire trial unless he is to be called as a witness. MCL 780.761. If the victim is going to be called to testify, the court may, "for good cause shown, order the victim to be sequestered until the victim first testifies." MCL 780.761. However, "[t]he victim shall not be sequestered after he or she first testifies." MCL 780.761.

In the present case, Sparks was the first person to testify. After Sparks testified, he remained in the courtroom while Eades testified regarding her version of events. During Eades's testimony, the trial court observed that Eades was becoming nervous as a result of Sparks remaining in the courtroom. While Woods' trial counsel argued that Sparks should be removed from the courtroom entirely, the trial court allowed Sparks to remain. As a compromise, the court had Eades face the jury box while she was testifying so as to avoid making eye contact with Sparks. While Woods certainly had good reason to be concerned about Sparks's presence, the plain language of MCL 780.761 is clear that Sparks had an absolute right to remain in the courtroom once he testified. MCL 780.761. Therefore, the trial court did not abuse its discretion when it allowed Sparks to remain in the courtroom after the completion of his testimony.

There were no errors warranting relief.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro