# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ANTHONY DEWAYNE TYLER,

       Defendant-Appellant.

UNPUBLISHED
January 12, 2016

No. 323322
Muskegon Circuit Court
LC No. 14-064636-FH

Before: BOONSTRA, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of resisting and obstructing a police officer, MCL 750.81d(1). Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 20 months to 15 years' imprisonment. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On March 24, 2014, Scott Oliver, a parole agent through the Michigan Department of Corrections (MDOC), received a telephone call regarding "some potential trouble that happened over the weekend" at a house where defendant was residing. The "trouble" allegedly occurred between defendant and another individual who were both assigned to Oliver as parolees. As a result, Oliver decided to conduct a parole investigation, and went to the house. When he arrived, he observed defendant walking down the street and away from the house. Oliver told defendant to get in his car, but defendant refused. Nevertheless, when Oliver continued to the residence, defendant eventually turned around and headed there as well.

Approximately 10 minutes later, Oliver determined that defendant and the other individual had each committed potential parole violations and should be arrested pending further investigation. Oliver contacted Officer Fernando Hernandez of the Muskegon Heights Police Department for support in conducting the arrest. When Hernandez arrived at the house, defendant was upstairs. Shortly thereafter, defendant walked downstairs into the foyer, and Hernandez told him that he was being arrested. Hernandez told defendant to face the wall and place his hands on the wall so that Hernandez could search and secure defendant. However, defendant did not do as told. Rather, according to Hernandez, "[h]e started mumbling some profanities and went towards trying to go back upstairs." Although Hernandez did not know exactly what defendant said, Oliver testified that defendant made a comment about going to put something back in his room.

-1-

When defendant attempted to go back upstairs, Hernandez grabbed defendant's hands and "used some force to place both his hands on the wall." Hernandez began to search defendant's person, but defendant "started to pull away again." Hernandez testified that he had one hand on defendant while he was using his other hand to pat defendant down, but then defendant started to move his hand away from the wall. As a result, Hernandez had to use "additional force to secure" defendant. At that point, defendant "became agitated and verbally insulting to" Hernandez; he "started to make threats" and began accusing Hernandez of "roughing him up." Defendant told Hernandez that he "better not rough him up" because defendant "would get out of jail soon and . . . knew that [Hernandez] had to leave work at some point, [so] he would be there to make sure that [Hernandez] would not do that to him again." Hernandez asked defendant if he was making threats, and defendant responded that he was. Defendant also used "racial slurs" including "the N word," and he stated that he would "kick [Hernandez's] a[**]."

At some point thereafter, Hernandez attempted to place defendant's hands behind his back. Hernandez testified that he had to use more force than was ordinary because defendant would not voluntarily place his hands behind his back, but instead "kept pulling away." Nevertheless, Hernandez eventually secured defendant in handcuffs, and defendant was transported to the county jail.

Hernandez testified that approximately five to six minutes passed between Hernandez's initial encounter with defendant to the time that defendant was placed in the patrol car, and that it took approximately one to two minutes to secure defendant in handcuffs after Officer Hernandez told defendant to put his hands behind his back. Hernandez testified that this procedure would generally take a matter of seconds, but it took longer because of defendant's resistance.

After the prosecutor rested, defendant requested a jury instruction for the lesser-included offense of attempted resisting and obstructing a police officer. The trial court denied defendant's request for the reason that the evidence only supported a conviction of the completed offense. Defendant was convicted as described above. This appeal followed.

## II. JURY SELECTION

Defendant first argues that the trial court erred by denying his request to dismiss a prospective juror for cause. We disagree. We review a trial court's rulings whether to excuse a juror for cause for an abuse of discretion. *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000). In doing so, "[t]his Court defers to the trial court's superior ability to assess from a venireman's demeanor whether the person would be impartial." *Id*. at 522; *People v Lee*, 212 Mich App 228, 251; 537 NW2d 233 (1995). However, where a defendant expresses satisfaction with an empaneled jury and has several peremptory challenges remaining, the defendant waives the issue for appeal. *People v Legrone*, 205 Mich App 77, 82; 517 NW2d 270 (1994).

Here, defendant had multiple peremptory challenges remaining at the time his counsel affirmatively asserted, "We have a jury." Accordingly, defendant has waived his argument regarding the trial court's ruling on his challenge for cause. *Id*.

In any event, were we to review this issue under the plain error standard, *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999), we would not find that defendant's substantial rights were affected. Defendant used a peremptory challenge to excuse the potential juror; thus, the juror had no impact on the ultimate verdict. When the jury was empaneled, defendant had three peremptory challenges remaining, and thus cannot establish that he would have used the peremptory challenge on another juror had the trial court granted his challenge for cause. See *Lee*, 212 Mich App at 248-249.

### III. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that there was insufficient evidence to sustain his conviction. We disagree. We review de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We view the evidence in a light most favorable to the prosecution, to determine whether the evidence was sufficient to justify the jury's finding that the essential elements of the crime were proven beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Circumstantial evidence and all reasonable inferences drawn therefrom may constitute satisfactory proof of the crime. *Carines*, 460 Mich at 757.

The elements of resisting and obstructing a police officer under MCL 750.81d(1) are as follows:

> (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his duties. [*People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (citation and quotation omitted).]

To "obstruct" a police officer includes "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a); see also *People v Moreno*, 491 Mich 38, 52; 814 NW2d 624 (2012).

The evidence presented was sufficient to find beyond a reasonable doubt that defendant committed the offense of resisting and obstructing a police officer. The evidence established that during his arrest by Hernandez, who was in full uniform and identified as a police officer, defendant failed to comply with the Hernandez's command to turn and face a wall, that defendant repeatedly pulled away when the officer attempted to search and handcuff him, and that defendant threatened the officer. A rational jury could, therefore, find beyond a reasonable doubt that defendant resisted or obstructed Hernandez. Viewing the evidence in a light most favorable to the prosecution, *Harverson*, 291 Mich App at 175, sufficient evidence was presented to establish defendant's guilt of the charged crime. Although defendant argues that he did not punch, kick, bite, or injure Hernandez, such conduct is not a required element of a violation of MCL 750.81d. See MCL 750.81d(7)(a).

-3-

## IV. ATTEMPT INSTRUCTION

Defendant next argues that the trial court abused its discretion when it declined to instruct the jury on a lesser-included offense of attempted resisting and obstructing a police officer. Again, we disagree. While questions of law arising from jury instructions are reviewed de novo by this Court, "a trial court's determination whether an instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Burks*, 308 Mich App 256, 266; 864 NW2d 580 (2014). An abuse of discretion occurs when the trial court's "decision is outside the range of principled outcomes." *Id*.

An attempt to commit a crime "consists of (1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense." MCL 750.92; *People v Thousand*, 465 Mich 149, 164; 631 NW2d 694 (2001). Thus, to be guilty of attempt, a defendant must act in furtherance of his intent to commit a crime. *Id*.

MCL 768.32(1) provides:

> [U]pon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

When a defendant requests a jury instruction on the attempted commission of the offense charged, the trial court must give the instruction when a rational view of the evidence would support it. *People v Silver*, 466 Mich 386, 388; 646 NW2d 150 (2002). However, a trial court does not err in omitting an instruction "where the evidence tends only to prove the greater" offense. *People v Cornell*, 466 Mich 335, 355-356; 646 NW2d 127 (2002) (quotation marks omitted).

In this case, the evidence only tended to prove that defendant completed the offense of resisting and obstructing arrest; his actions went beyond a mere act toward the commission of the offense. Additionally, defendant did not argue or present evidence that he tried to resist or obstruct the officer, but that he failed to do so or was otherwise prevented from completing the offense; rather, he argued that his conduct did not constitute resisting or obstructing under MCL 750.81d. See *People v Adams*, 416 Mich 53, 56; 330 NW2d 634 (1982) (permitting courts to consider "the evidence or defense presented or argued" in determining whether an attempt instruction is appropriate). Moreover, the fact that the officer was able to complete the arrest is irrelevant, given that MCL 750.81d(1) does not require a defendant to be successful in avoiding arrest to be convicted of resisting and obstructing. When defendant failed to comply with the officer's commands, pulled away from the officer, and made threats, he completed the conduct necessary to establish the offense. Simply put, defendant's conduct either constituted resisting arrest, or it did not. The evidence does not support the conclusion that defendant's conduct constituted an attempt to resist arrest. Accordingly, because the evidence only tended to prove the greater offense, *Cornell*, 466 Mich at 355-356, the trial court did not abuse its discretion in declining to give the requested instruction.

## V. SENTENCING

Lastly, defendant raises several issues regarding his sentencing. Because none of these issues were raised before the trial court, our review is limited to plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. Defendant argues that he is entitled to resentencing because of the trial court's failure to consider certain mitigating factors. Although he concedes that a sentencing court in Michigan is not required to consider all mitigating factors, see *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011), he argues that this Court should follow federal precedent requiring consideration in sentencing of any mitigating evidence. However, in *Osby*, we held that such a requirement does not apply to Michigan's sentencing scheme. *Id*. Because we are bound by our decision in *Osby*, defendant's argument is without merit. MCR 7.215(J)(1).

Nevertheless, defendant specifically argues that the trial court should have considered his family support and his remorse as mitigating factors in measuring his rehabilitative potential.[1] Although we have stated that family support may be a factor in support of a downward departure in sentencing, *People v Portellos*, 298 Mich App 431, 454-455; 827 NW2d 725 (2012), and that a trial court may consider a defendant's remorse (or lack of) in determining a defendant's rehabilitative potential, *People v Spanke*, 254 Mich App 642, 650; 658 NW2d 504 (2003), defendant has not provided any factual support for his claim that he even possessed such support or expressed such remorse. See *People v Elston*, 462 Mich 751, 600; 614 NW2d 595 (2000) (stating that the defendant bears "the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated.") Further, we are not inclined to second-guess the trial court's superior ability to judge defendant's sincerity with regard to any expressions of remorse that he made. *People v Daniel*, 462 Mich 1, 11; 609 NW2d 557 (2000). Therefore, no plain error with respect to defendant's sentence has been established in this regard.

Defendant also argues that he was entitled to a lesser sentence because his mental health history constituted a "serious mental disease or defect." And, he claims that the trial court should have conducted an assessment of his rehabilitative potential through intensive treatment. Although defendant's presentence investigation report (PSIR) establishes that he had a history of mental health issues, the record is devoid of information or testimony that would substantiate that his mental health issues diminished or precluded his culpability for committing the charged crime. Moreover, the trial court is not required to conduct an assessment to measure rehabilitative potential. Under MCR 6.425(A)(1)(e), defendant's PSIR must only contain his "medical history, substance abuse history, if any, and, if indicated, a current psychological or psychiatric report," and defendant's PSIR follows these requirements. Further, because

---

[1] In making this argument, defendant claims that § 3E1.1 from the federal sentencing guidelines, which provides that a sentencing court may decrease a defendant's offense level by two levels if the defendant "clearly demonstrates acceptance of responsibility," should apply. *Federal Sentencing Guidelines*, § 3E1.1(a). However, the federal sentencing guidelines are not binding on the state trial courts. See *People v Weathersby*, 204 Mich App 98, 114; 514 NW2d 493 (1994).

-5-

defendant did not object to the contents of his PSIR, the information is presumed accurate. *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).

Defendant argues that his sentence was based on inaccurate information because the trial court did not account for these specific mitigating factors in imposing his sentence. The trial court did not err in its consideration of the mitigating factors, however, and defendant's argument is therefore without merit.

Additionally, defendant argues that the trial court should have stated on the record how it arrived at his 15-year maximum sentence. Defendant's maximum sentence was proper in accordance with his status as a fourth-offense habitual offender. MCL 769.12. Although a trial court's decision to enhance a defendant's sentence as a habitual offender is discretionary, *People v Bonilla-Machado*, 489 Mich 412, 416; 803 NW2d 217 (2011), the trial court is not legally required to state on the record that it is exercising that discretion, *People v Knapp*, 244 Mich App 361, 389; 624 NW2d 227 (2001). Therefore, the trial court was not required to articulate how it arrived at defendant's maximum sentence.

Defendant also claims that the trial court erred by failing to articulate why defendant's sentence was proportionate. When a trial court cites the appropriate guidelines range[2] and sentences the defendant within those guidelines, the trial court is not required to articulate its reasoning further. *People v Bailey (On Remand)*, 218 Mich App 645, 646-647; 554 NW2d 391 (1996). The trial court sentenced defendant within the guidelines range in this case; therefore, it properly articulated its reasoning at sentencing. *Id*.

Finally, defendant argues that his sentence was "excessive" under federal and state constitutional principles. To the extent that, in making this argument, defendant is claiming that his sentence constitutes cruel and unusual punishment under US Const, Am VIII or Const 1963, art 1, § 16, we find nothing in the record from which to so conclude. See *People v Johnson*, 309 Mich App 22, 35; 866 NW2d 883 (2015), reversed in part on other grounds 497 Mich 1042 (2015).

Finally, because none of the errors alleged by defendant require resentencing, his counsel was not ineffective for failing to object to the imposition of his sentence. See *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jane E. Markey

---

[2] We note that defendant does not challenge the calculation of his minimum sentencing guidelines range or argue that any sentencing variables were scored in error.